# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DAVID S. COLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:09CV365 |
| ) | |
| THE GUILFORD COUNTY BOARD ) | |
| OF EDUCATION, ) | |
| ) | |
| Defendant. ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on the motion of Defendant Guilford County Board of Education ("School Board") for summary judgment. (Docket No. 16.) Plaintiff has responded in opposition to this motion, and Defendant filed a reply. (Docket Nos. 20, 24.) The Court heard oral argument on September 2, 2010. For the reasons stated herein, this Court recommends that Defendant's motion be granted and that this action be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 71 years old in 2008 when he interviewed with several of Defendant's principals for a high school math teacher position. (Docket No. 20, Pl.'s Br. in Opp'n to Def.'s Summ. J. Mot., Declaration of David S. Colin ("Pl.'s Decl.") at 1.) Plaintiff's sole claim for relief in this action is that he was not hired due to his age in violation of the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* (Docket No. 1, Complaint ("Compl.").) He seeks damages as well as injunctive and declaratory relief. (*Id*.)

Plaintiff was interviewed at nine separate Guilford County schools from April 2008 through July 2008. (Pl.'s Decl. at 2.) Although Plaintiff did not hold a North Carolina teacher's certificate and had no high school teaching experience, he had taught at Randolph Community College.[1] (*Id*.) Plaintiff applied to the schools under a lateral entry program. (Compl. ¶ 14; Docket No. 17, Def.'s Mem. of Law in Supp. of Mot. for Summ. J., at 2.) In terms of Plaintiff's educational background, Defendant considered Plaintiff "highly qualified" to teach math. (Docket No. 22-1, Def.'s Resp. to Pl.'s First Set of Reqs. for Admis., Req. No. 3.) Plaintiff graduated in 1959 from Georgia Tech with a bachelor's degree in electrical engineering and worked as an engineer for many years. (*Id*., Req. Nos. 1, 2.) Plaintiff passed the initial screening phase for employment and was placed in the pool of potential math teachers for consideration by principals. (*Id*., Req. Nos. 4, 7.)

In the Summer of 2003, five years prior to the events at issue in this action, Plaintiff applied for math teacher positions with Defendant. (Docket No. 16, attached Pl.'s Dep. at 42.) Plaintiff interviewed with principals at three schools but was not hired by any principal. (*Id*. at 58-59.) After not being hired, Plaintiff wrote a letter dated August 12, 2003, to nine

---

[1] For the class "Electronic Devices," Plaintiff shows that he received a favorable review of his teaching skills on December 10, 2007. (Docket No. 20, Ex. C to Pl.'s Decl.) There is also some evidence that Plaintiff taught at Guilford Technical Community College. (Docket No. 16, Def.'s Mot. for Summ. J., attached Deposition of David Solomon Colin ("Pl.'s Dep.") at 15-16.)

Guilford County high school principals and sent copies to the school superintendent, human resources director, and a North Carolina state senator. (*Id.*, attached Ex. 1.) In this letter, Plaintiff complained of not having been sent a response regarding his employment requests. (*Id.*) Plaintiff advised in the letter that if the recipient is too busy to send a reply, he has "a problem" and that not replying is "at minimum rude and at maximum stupid." (*Id.*) Plaintiff said that he does not "really need a job" because he is retired. (*Id.*) Plaintiff tells the recipients that they "should be ashamed of [them]selves" and that he is "mad as hell" at being "treated this way." (*Id.* at 2) In the letter, Plaintiff also discounted his own teaching ability by stating that he "might be a disaster as a teacher" and that he "certainly know[s] little about running a school system or educating children." (*Id.* at 2, 1) He added, "[t]hus, I can understand that you had no desire to hire, interview or even consider me for the position I applied for." (*Id.*)

Plaintiff also wrote an email to school official Michael T. Harris in October 2003 in which Plaintiff asked, "How is that Turkey principal doing? The one you paid off kids and discouraged others. [sic] Give him a promotion." (Pl.'s Dep. at 88-91 (copy of email was submitted by Defendant during oral argument).)

During his deposition in this action, Plaintiff described his recent exchange of emails with Noah Rogers, principal of Smith High School. Plaintiff stated that he wrote to Mr. Smith on August 20, 2008, inquiring about a position. (Pl. Dep. at 140-46; Docket No. 16, Dep. Ex. 4.) When Plaintiff had not received an immediate response he wrote Mr. Rogers

again less than 24 hours later asking, "No interest?" (*Id.*, Dep. Ex. 4.) Plaintiff further wrote in that email that he was "Highly Qualified" and "Probably more advanved [sic] math then [sic] anyone on your staff." (*Id.*) Plaintiff asked, "Whats [sic] the problem?" (*Id.*) He concluded by advising Mr. Rogers that he does "deserve a response. It is considered proper form." (*Id.*)

During discovery, Plaintiff deposed six of the nine principals who interviewed him for the 2008 positions. (Docket No. 20 at 3.) Plaintiff knew only one of the principals, Mr. Joe Yeager, from his 2003 attempt to obtain employment at Guilford County Schools.[2] (Pl.'s Dep. at 116.) There is no evidence submitted directly from three of the persons with whom Plaintiff interviewed.

Principal Pete Kashubara interviewed Plaintiff for a position at Weaver Academy. (Docket No. 16, attached Deposition of Pete Z. Kashubara, II ("Kashubara Dep.").) Mr. Kashubara testified that he made the final decision with regard to hiring, although any person selected would have to pass a background check and similar vetting through the county school board. (*Id.* at 15.) He also testified that he "vividly" remembered Plaintiff as being loud, boisterous, irritated, and agitated when he arrived for his interview because some of the

---

[2] Plaintiff testified that in 2003 Mr. Yeager told Plaintiff that he was "looking at a younger man" for a position in which Plaintiff was interested. (Pl. Dep. at 41, 64-65.) Plaintiff wisely does not argue that this constitutes sufficient direct evidence of discrimination that allegedly occurred in 2008. (Docket No. 20.) Plaintiff's case rises and falls on summary judgment review on the *McDonnell Douglas* burden shifting framework.

doors leading outside the school were locked when Plaintiff arrived. (*Id*. at 18.) Mr. Kashubara also testified that Plaintiff was "weak" pedagogically and that most of his background knowledge was at a "very basic level." (*Id*. at 20.) He stated that Plaintiff did not share much of a collaborative sense. (*Id*. at 20-21.) Mr. Kashubara concluded that Plaintiff was not a good fit for the school. (*Id*. at 23.) Instead, Mr. Kashubara hired Ms. Lindsey Moon who while still in high school was accepted into the "teaching fellow" state scholarship program and later graduated college with a GPA of 3.79, and was a rookie teacher of the year nominee in Wake County. (*Id*. at 24.) Ms. Moon also had an excellent reference from her former principal and two years of teaching experience in Wake County with experience in four different core content areas. (*Id*.)

The principal at Ragsdale High School testified that she also made the hiring decisions for her school. (Docket No. 16, attached Deposition of Katherine M. Rogers ("K. Rogers Dep.").) Ms. Rogers, who was 60 years old at the time of her deposition, testified that she remembered Plaintiff, his flippant demeanor in the interview, and his lack of interpersonal skills. (*Id*. at 22-23.) She also testified that after not hiring Plaintiff she received a "short-toned" email from him. (*Id*. at 23-24.) Ms. Rogers stated that she never talked to anyone in the district office about Plaintiff. (*Id*. at 24.) Ms. Rogers testified that during the Summer of 2008 she hired Jennifer Martin who had graduated from NC State University with a mathematics education degree, had successfully completed student teaching, had excellent references, and offered an "amazing" interview. (*Id*. at 16-17.) Ms. Rogers also hired

Nicholas McIntosh who was a visiting faculty member from Jamaica. (*Id*. at 17.) He had 8-10 years of math teaching experience with 14-18 year olds. (*Id*. at 18-19.) Finally, Ms. Rogers hired Ms. Allison Bryant who was a high school teacher from Ohio with 10 years of experience. (*Id*. at 21.) Ms. Bryant had "impeccable" references and did an "outstanding" job in her interview. (*Id*.) Ms. Rogers stated that all three of the candidates whom she hired possessed the N.C. state teaching license. (*Id*.)

Principal Noah Rogers of Smith High School testified that he made the decision to hire John Phillips, rather than Plaintiff, in the Summer of 2008. (Docket No. 16, attached Deposition of Noah B. Rogers ("N. Rogers Dep.") at 11.) Mr. Rogers stated that the math department chair knew that Mr. Phillips was doing a good job as a student teacher at the school and fit their need for a teacher "trained there in the building, who knew the students and could go right in." (*Id*.) Mr. Rogers said that he did not remember Plaintiff. (*Id*. at 17.) He did remember receiving an email about a vacant position from Plaintiff, but at the time the position had been filled; therefore, he did not interview Plaintiff. (*Id*. at 17-19.) Mr. Rogers was 50 years old at the time of his deposition. (*Id*. at 21.)

Mr. Angelo Kidd testified that he was the principal of Northwest High School in 2008. (Docket No. 16, attached Deposition of Angelo Kidd ("Kidd Dep.").) Mr. Kidd said that as principal he made the hiring decisions. (*Id*. at 13.) He hired Megan Harper and Michelle Halchin. (*Id*. at 17-19.) Megan Harper had prior math teaching experience at Eastern Guilford High School and another school, and had been successful at teaching a higher level

-6-

of math. (*Id*. at 17-18.) Ms. Halchin was an experienced teacher who had taught Algebra I at Southern Guilford High School. (*Id*. at 19.) Her position was being "surplused," and her principal gave her a good recommendation, especially for Algebra I which is the position Mr. Kidd was attempting to fill. (*Id*.) Mr. Kidd remembers Plaintiff as having no public school experience. (*Id*. at 20.) Mr. Kidd also testified that Plaintiff dominated the interview, "went on and on and on about how good he was," and was very pushy and loud. Mr. Kidd felt that Plaintiff would not be a good fit for his school. (*Id*.)

Principal Marcus Gause testified that he did not recall Plaintiff's interview "at all." (Docket No. 21, attached Deposition of Marcus D. Gause ("Gause Dep.") at 23.) However, he also testified that it was a concern that Plaintiff had no high school teaching experience while the three candidates that he hired all had prior high school teaching experience. (*Id*. at 25-26.)

Finally, Jamie King apparently was an assistant principal at Northeast High School who recommended to the principal regarding hiring. (Docket No. 21-5, attached Deposition of Jamie S. King ("King Dep.") at 12.) Mr. King said that during the interview of Plaintiff he felt that Plaintiff would not be a good fit for their kids and that Plaintiff would not "go that extra mile to help our kids out." (*Id*. at 25.) He did not talk to anyone else about Plaintiff. (*Id*. at 26.)

On summary judgment review, Defendant contends that Plaintiff has failed to establish a prima facie case of age discrimination and that, even if he has established such

-7-

a case, Defendant has articulated legitimate, non-discriminatory reasons for not hiring Plaintiff that are not rebutted. (Docket No. 17.) Plaintiff contends that his evidence shows a prima facie case and that although Defendant has presented evidence of legitimate, non-discriminatory reasons with respect to some of Plaintiff's job applications, Defendant has failed to do so with respect to the remaining applications. (Docket No. 20.) Plaintiff's counsel stated at oral argument that each hiring decision made by each principal was a "stovepipe" decision, without significant input from the central school office. Effectively, therefore, this case includes 9 separate cases of age discrimination, according to Plaintiff.

## DISCUSSION

**A.** **Summary Judgment Standard**

Summary judgment is appropriate only when no genuine issue of material fact exists. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. (*Id.* at 255.) The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward

with facts sufficient to create a triable issue of fact." (*Id*. at 718-19 (citing *Anderson*, 477 U.S. at 247-48).) A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. *See, e.g., Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *see also Anderson*, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials.)

**B.     Prima Facie Case of Age Discrimination**

To establish a prima facie case of age discrimination, Plaintiff must show: (1) that he is a member of the protected class; (2) that he applied for a position; (3) that he was qualified for the position; and (4) that he was rejected under circumstances that create an inference of unlawful discrimination. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310-11 (1996); *Throckmorton v. Waste Mgmt. of Carolinas, Inc.*, 34 Fed. Appx. 88, 91 (4th Cir. 2002). Defendant argues that Plaintiff has not established the third and fourth elements of his prima facie case. (Docket No. 17 at 6.) It is not disputed that Plaintiff was over 40 years of age when he applied for the high school math teacher positions in question. Therefore, it is undisputed that Plaintiff has established the first two elements of a prima facie case.

**1.     Plaintiff's qualifications**

The third element of the prima facie case asks whether Plaintiff is qualified for the high school math teacher positions he applied for. Defendant admits in a discovery response that, in terms of educational background, Plaintiff is "highly qualified" to teach high school math. (Docket No. 22-1, Def.'s Resp. to Pl.'s First Set of Reqs. for Admis., Req. No. 3.)

Defendant does not argue that Plaintiff fails to meet any requirement for the lateral entry program under which Plaintiff was applying. Rather, Defendant argues that Plaintiff's "brash conduct and dubious interpersonal skills render him unqualified" under the school board's "established criteria." (Docket No. 17 at 6.)

Defendant points to Plaintiff's own deposition testimony to establish the school board's "criteria" for appropriate conduct. (*Id*. at 6-7.) Plaintiff testified that he knew from Defendant's online information that Defendant required its teachers to work collaboratively, to exhibit professionalism and high ethical standards, and to respect others. (Docket No. 16, Pl.'s Dep. at 67-68.) It is well established that an employer may properly establish subjective criteria such as a person's interpersonal skills in describing the necessary qualifications for a position. *Hux v. City of Newport News,* 451 F.3d 311, 318 (4th Cir. 2006); *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1130 (4th Cir. 1995).

Plaintiff includes no discussion in his brief concerning the August 12, 2003 letter that he sent to school officials or the email Plaintiff sent to Michael Harris in October 2003. (Docket No. 20.) During oral argument, Plaintiff argued that Defendant cannot rely on this evidence to show that Plaintiff was not qualified to be a teacher because the 9 principals, the individual "decision-makers" in 2008, did not know of the letter or email. Plaintiff also seeks to rely upon his own perception of his performance during interviews. (*Id*. at 9.)

On review, the Court finds and concludes that if Defendant, at the summary judgment stage, may properly rely upon Plaintiff's August 2003 letter, the October 2003 (Harris) email,

the August 2008 (Rogers) email, and Plaintiff's later email barrage of Defendant[3] to show a lack of "qualification" by Plaintiff for purposes of a prima facie case, then Plaintiff clearly has not shown that he was qualified to teach high school students or be employed by Defendant. Plaintiff's letter and emails exhibit a striking, and unmistakable, lack of good judgment, lack of professionalism and lack of respect for others, as well as an inability to work collaboratively with others. Defendant has shown that these are reasonable job qualifications for its teachers.

Similarly, if Defendant, in showing the absence of a prima facie case, may rely upon the descriptions of Plaintiff's interviews given by the interviewing school principals Pete Kashubara, Katherine Rogers, Angelo Kidd, and Jamie King, then Plaintiff has not shown that he is qualified to be a high school teacher. Although Plaintiff gives his own description of these interviews in his declaration, he does admit to becoming "worried" when he could not gain access to Weaver Academy because the front doors were locked. (Pl.'s Dep. at 117-18.) Plaintiff told Principal Kashubara that he should unlock them. (*Id*.) Plaintiff stated that he "might" have told Mr. Kashubara that having the doors locked was not a good thing to do

---

[3] Plaintiff admitted during his deposition that after he was not hired in 2008, he embarked upon an email campaign with the school human resources office which lasted into 2009. (Pl.'s Dep. at 173-80.) He conceded that in one email he wrote that he knew that he was being a pest and admitted that once the office answered one question he would sometimes go on to new subjects. (*Id*. at 174, 177.) A September 24, 2008 letter to Plaintiff from Defendant's chief human resources officer, Peggy Thompson, states that to that date the human resources office had received 95 emails from Plaintiff. (Docket No. 20, Ex. J.)

-11-

if you're trying to hire people. (*Id*.) That Plaintiff considered such statements appropriate for an interviewee to make to the high school principal who was interviewing him objectively shows a lack of good judgment and professionalism on his part.

The issue of law is therefore whether Defendant may rely upon the letter and emails, and other evidence such as the undisputed aspects of Plaintiff's performance in interviews, to show that Plaintiff was not qualified to be a high school teacher and therefore cannot make out a prima facie case on summary judgment review. It is not disputed that the individual decision-makers did not know of the August 2003 letter and October 2003 email when they determined not to hire Plaintiff. There is no evidence that anyone other than Mr. Rogers knew of the August 2008 email. It also is not disputed that the principals with whom Plaintiff interviewed did not share information regarding Plaintiff's performance in those interviews with other principals. According to Plaintiff's argument, the Court cannot consider this evidence about "qualification" in determining the presence of a prima facie case because no decision-maker knew the information at the time of the decision not to hire Plaintiff.

The Court's review of pertinent case law shows, however, that the weight of authority allows the consideration of such evidence in determining whether Plaintiff has established a prima facie case. The starting point for analysis is *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352 (1995). In *McKennon*, an ADEA action, the Court assumed that the sole reason for McKennon's discharge was her age, and her discharge was violative of the ADEA.

*Id*. at 356. During the plaintiff's deposition, the defendant discovered that the plaintiff had copied several confidential documents bearing upon the company's financial condition, took them home, and shared them with her husband. *Id*. at 355. A few days after the plaintiff's deposition, defendant sent the plaintiff a letter declaring that removal and copying of the records was in violation of her job responsibilities and advising her (again) that she was terminated. *Id*. The district court granted summary judgment for the defendant, holding that the plaintiff's misconduct was grounds for her termination and that no remedies were available to her under the ADEA. *Id*.

The Supreme Court granted certiorari to resolve conflicting views among the circuits on whether all relief must be denied when an employee has been discharged in violation of the ADEA and the employer later discovers some wrongful conduct that would have led to discharge if it had been discovered earlier. *Id*. at 356. The Court reasoned that the defendant "could not have been motivated by knowledge it did not have and it cannot now claim that [plaintiff] was fired for the nondiscriminatory reason." *Id*. at 360. The Court did state, however, that generally neither reinstatement nor front pay is an appropriate remedy in cases of that type. *Id*. at 361-62.

The substantial majority of courts recognize that *McKennon* does not apply to issues which do not turn on the employer's *motivation* in making the challenged employment decision. In particular, such courts do not apply *McKennon* to review of the prima facie case in discrimination cases. In *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 621 (3rd Cir. 1996),

*abrogated on other grounds, Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999), the Third Circuit rejected the application of *McKennon* to analysis at the prima facie stage of an ADA discrimination claim because the after-acquired evidence doctrine is an affirmative defense "that becomes meaningful once the plaintiff has established a *prima facie* case of discrimination."[4]

In *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275 (10th Cir. 1999), the court distinguished *McKennon* in a failure to hire, Title VII, race discrimination action because the evidence that the plaintiff argued was after-acquired evidence informed whether "Plaintiff was qualified for a pharmacist position." *Id*. at 1281. "*McKennon*'s discussion on after-acquired evidence [did] not apply to [that] case and the evidence to which Plaintiff object[ed] was nonetheless admissible to show that Plaintiff's prima facie case was not supported by a preponderance

---

[4] In *Bowers v. N.C.A.A.*, 475 F.3d 524 (3d Cir. 2007), an ADA case, relying upon *McKennon,* the court in dicta found that the defendants could not argue that they were motivated by the plaintiff's drug abuse in deeming the plaintiff to be a "non-qualifier" under NCAA rules, when the defendants were unaware of the drug abuse at the time that the alleged disability discrimination took place. *Id*. at 537. The court made clear that the defendants' motivation was at issue in that decision. *Id*. The court did not refer in any way to *McNemar* which leads this Court to conclude that *Bowers* does not alter the Third Circuit's precedent that *McKennon* is not applicable in the prima facie stage of an action where the defendant's motivation is not at issue.

In addition, in *Risk v. Burgettstown Borough, PA*, 364 Fed. Appx. 725 (3d Cir. 2010), a discriminatory discharge action, the court cited *Bowers* in finding that after-acquired evidence cannot be used to contest a plaintiff's qualifications for purposes of establishing a prima facie case of discrimination. *Id*. at 730. The *Risk* court does not mention the *McNemar* decision or the *Bowers* court's focus on the defendant's motivation in making the challenged decision. The *Risk* opinion is an unpublished decision.

of the evidence." *Id*.

In *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1251 (7th Cir. 1990), the court determined prior to the issuance of *McKennon* that the rationale of *McKennon*, as expressed in *Eastland v. TVA*, 704 F.2d 613, 626 (11th Cir. 1983) (employer may not establish legitimate, non-discriminatory reason for action by relying upon information not considered when making hiring decision), is not applicable at the prima facie stage of the case. The court found that the determination whether the plaintiff is qualified "requires an objective analysis" in which "an employer's knowledge or lack of knowledge is of no relevance." *Gilty,* 919 F.2d 1251.

The Fifth Circuit in an ADA discrimination action also declined to apply *McKennon* to statements which were "being used . . . in relation to [plaintiff's] job qualifications, a matter which has nothing to do with the motivation behind her employer's action. *McKennon* involves the use of after-acquired evidence for a different reason than here, and is therefore not on point." *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998) (per curiam).

In *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985), the Ninth Circuit in a pre-*McKennon* case distinguished the use of after-acquired evidence which "would be relevant as part of the defendant's efforts to rebut Mantolete's prima facie case of discrimination,"

from its use to "justify [defendant's] refusal to hire" which would be "questionable."[5] *Id*. at 1424.

Turning to the district courts, in *E.E.O.C. v. Fargo Assembly Co.*, 142 F. Supp. 2d 1160, 1164-65 (D.N.D. 2000), the court held that under *McKennon* the defendant "may argue the after-acquired evidence demonstrates [the candidate] is not entitled to ADA protection because he is not qualified," although defendant may not argue that it decided not to hire the candidate because of the after-acquired evidence. Similarly, in *Matewski v. Orkin Exterminating Co.*, No. Civ. 02-233-P-C, 2003 WL 21516577, at *4 n.14 (D.Me. July 1, 2003), the court followed *Anaeme* and *McNemar* in concluding that *McKennon*'s after-acquired evidence doctrine did not present a problem in assessing whether, "as a threshold matter, an employee is (or was at the time of the adverse action) a 'qualified individual with a disability,' an issue as to which the plaintiff bears the burden of proof."

The few district court decisions to the contrary are not persuasive. In *Penn v. Aerospace Corp.*, No. 1:08cv620, 2009 WL 585839 (E.D. Va. Mar. 6, 2009), a discriminatory discharge action, the court found that after-acquired evidence was not admissible to defeat plaintiff's prima facie case because "[a]t this stage, it is the defendant's perception at the time of termination that is important." *Id*. at *8. The court cites another

---

[5] In an unpublished opinion construing the Rehabilitation Act, *Junot v. Maricopa County*, No. 92-15712, 1995 WL 579636 (9th Cir. Oct. 2, 1995), the court found that after *McKennon*, after-acquired evidence should not be used to determine a plaintiff's qualifications for the position.

discriminatory discharge case from the District of South Carolina stating that it is the employer's perception that is important on the question whether plaintiff was meeting the employer's legitimate expectations at the time of termination. *Id*.

This Court finds *Penn* inapposite to the present failure-to-hire action because there is no issue in the present action concerning Plaintiff's job performance while working for Defendant and whether he was meeting Defendant's legitimate expectations. Plaintiff provides no support for the proposition that in a failure-to-hire action it is the employer's perception that is important when determining whether a plaintiff is qualified in the first instance for the position. *Gilty* held the opposite when it found that the inquiry as to the plaintiff's qualifications at the prima facie case stage is objective in nature. 919 F.2d at 1251. Because the inquiry for the present action is not linked to the employer's perception, there is no reason to limit the admissible evidence to what the employer knew at the time.

Finally, in *Dare v. Wal-Mart Stores, Inc.*, No. Civ. 02-0001, 2003 WL 21147657 (D.Minn. May 8, 2003), the Court relied upon *McKennon* in determining that after-acquired evidence is relevant only to determine damages and that the employer cannot challenge the plaintiff's employment qualifications with such evidence. *Id*. at *5. There is no discussion in *Dare* of the legal reasoning the above courts have employed in concluding that *McKennon* does not apply to the prima facie stage of the action.

After considering the above authority, this Court concludes and holds that Defendant's evidence bearing on Plaintiff's lack of qualification to be a high school teacher, although

unknown to the principals who did not hire him, is relevant and may be relied upon in the determination of Plaintiff's prima facie case of age discrimination at the summary judgment stage of review. Based upon the clear evidence of Plaintiff's lack of qualification, discussed above, the Court finds that Plaintiff has failed to show that he was qualified for the position of high school math teacher in the Defendant's school system, and therefore cannot make out a prima facie case of discrimination.

### 2. Circumstances giving rise to inference of discrimination

The fourth element of Plaintiff's prima facie case is that he was rejected for the position under circumstances that create an inference of unlawful discrimination. *Throckmorton*, 34 Fed. Appx. at 91. Given Plaintiff's failure to establish that he was qualified for the position, the Court need not consider this element of the prima facie case.[6]

---

[6] If Plaintiff had established a prima facie case of age discrimination, which he has not for the reasons described above, this Court would find that Defendant established legitimate, non-discriminatory reasons for not hiring Plaintiff for the positions filled by Mr. Kashubara, Ms. Katherine Rogers, Mr. Kidd, Mr. King, and Mr. Gause based upon their deposition testimony and other evidence contained in the summary judgment record. As to those hirings, this Court would also find that Plaintiff has not shown evidence of pretext that would allow him to survive summary judgment review. As to the other positions, summary judgment would not lie for Defendant on the basis of legitimate, non-discriminatory reasons on the present record because the discovery record is simply too sparse as to those hirings, lacking even development of the qualifications of those who were hired instead of Plaintiff. The Court would reopen discovery as to those hirings if Plaintiff's case had not failed at the prima facie case stage. The earlier discovery allowed by the Court was not sufficient for development of 9 separate discrimination cases, as would be the circumstance if summary judgment were to turn on the issues of legitimate reasons for a failure to hire, rather than a failure of "qualification" of Plaintiff for purposes of a prima facie case.

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment (Docket No. 16) be granted, and that this action be dismissed with prejudice.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: October 5, 2010